[L. A. No. 2028. In Bank.—August 8, 1908.]

## SIXTH DISTRICT AGRICULTURAL ASSOCIATION, Respondent, v. E. T. WRIGHT et al., Appellants.

District Agricultural Associations — State Agency — Assets of Are Public Property—Cannot Have Capital Stock or Certificates of Stock.—An agricultural association, organized under the act of April 15, 1880, and the subsequent act of 1891 (Stats. 1891, p. 138), is a state institution, a public agency of the state, which is within the exclusive management and control of the state and charged with the performance of a part of the functions of state government. Its property is public property, dedicated to the purposes of such public corporation, and accepted therefor by the state, and there is nothing in the laws relative to any such association which authorized it to have a capital stock or to issue certificates of stock, or which contemplated a retention of any interest in or control of any portion of such property by the persons forming such association or dedicating money or other property to its purposes.

Id.—Constitutional Law—Gift of Property to Private Corporation Invalid.—Section 10½ of said act of 1891, added thereto by the act of February 18, 1895, and carried into the General Agricultural District Act of March 31, 1897 (Stats. 1897, p. 304), purporting to authorize, in effect, the formation within the association of a private corporation, and the transfer, without consideration, of all the property of the association to the private corporation, to be managed and disposed of by it for its own use and benefit and the use and benefit of the stockholders, in the same manner that property of private corporations is ordinarily managed and disposed of, subject to the limitations specified therein, is unconstitutional, as being in conflict with section 31 of article IV of the state constitution, providing that the legislature shall have no power "to make any gift, or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever," except as prescribed in section 22 of the same article.

Id.—Name of District Associations — Designation by Number of District.—The act of April 15, 1880, and subsequent acts on the same subject, contemplated a single association for each agricultural district, and expressly declared that any association formed thereunder should be known and designated by the name of "———— Agricultural Association," leaving a blank for the insertion of a number or name which should distinguish it from the associations of other districts. Any such association assumed the name so far as it was then declared by the act, and those forming the association had no power to provide otherwise. In the absence

of other special designation by those forming or composing the association, to precede the words "agricultural association," to distinguish it from the associations of other agricultural districts, words indicating the number of the district would be supplied by law by reason of the provisions of the act, and by such name and style the association existed, with power to sue and be sued and to purchase, hold, and lease real estate for the purposes defined in said act.

ID.—MISNOMER OF ASSOCIATION—EVIDENCE OF IDENTITY.—The general rule is that misnomer of a corporation will not invalidate a grant. to or by it, ·if it appears from the instrument itself, or is shown by such evidence as is·admissible upon the question, that it was the corporation intended. And it is held accordingly, that deeds to a grantee described as "District Agricultural Association Number Six of California," and "Agricultural District Number Six of the State of California," passed title to the Sixth District Agricultural Association, and that any and all proceedings subsequently had by or on behalf of the association styled "Agricultural District Number Six," or the members or so-called stockholders thereof, were had. by or on behalf of the Sixth District Agricultural Association.

ID.—STATUTE OF LIMITATIONS INAPPLICABLE TO PROPERTY HELD IN TRUST FOR PUBLIC USE.—The statute of limitations has no application as to property held in trust· by a state institution or public· agency for a public use, which public use has not been discontinued or abandoned by any lawful act of public authority.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

J. S. Chapman, and Ward Chapman, for Appellant John C. Lynch.

J. W. McKinley, H. W. O'Melveny, and John D. Works, for the other Appellants.

Scarborough & Bowen, and Hunsaker & Britt, for Respondent.

ANGELLOTTI, J.—This is an appeal from a judgment in favor of plaintiff, and from an order denying the defendants' motion for a new trial. The action was one by plaintiff, alleging itself to be an agricultural association under the laws of

the state of California, providing for the formation of agricultural districts and for the organization of agricultural associations therein, and for the management and control of same by the state, against E. T. Wright and others, who, it was alleged, for the purpose of converting the same to their own use, had taken possession of all plaintiff's land and other property, and retain and use the same for their own profit and gain, to compel the defendants to account for and pay over and deliver all said property, and for a decree adjudging the defendants to be without interest in any of said property. The defendants claimed that plaintiff never was an agricultural association or corporation organized under any law, has no legal capacity to sue or hold property, and never owned any of the property described in the complaint. They further claimed that what they style "District Agricultural Association No. 6" is a corporation duly organized under the laws of the state, that it owns the property in suit, and that the directors elected by the stockholders thereof are entitled to the possession, management and control of such property, all of the defendants except Lynch being so-called directors elected by such stockholders. The findings of the trial court were in accord with plaintiff's allegations, and judgment was in favor of plaintiff for the possession of the real property, and for $5584 on account of moneys received by defendants as rents, issues, and profits of such real property found by the court to be in their possession at the time of judgment herein.

It is essential to an understanding of the questions involved that a statement of what we deem to be the material facts should be made. The real property in controversy, situated in Los Angeles County, was originally the property of the Southern District Agricultural Society, a private corporation, and was subject to a mortgage executed by it to one W. W. O'Melveny. This mortgage was foreclosed, the decree of foreclosure being entered November 12, 1879, and the property was sold under the decree to one Isaac N. Moore for $9191.70, who received a sheriff's deed therefor on August 9, 1880. In the mean time, early in 1880, it had been attempted to form an agricultural association under the provisions of the act of April 15, 1880 (Stats. 1880, official ed. p. 62; Bancroft ed. p. 238), for Agricultural District No. 6, created by said act and comprising the counties of Los Angeles, San Diego, San Ber-

nardino, Santa Barbara, Ventura, and Inyo, and in May, 1880, notice was given to the governor of the state by one George Rice, purporting to act as "Sect.," "by order of the committee," that such association had been formed, and requesting the appointment by him of the members of the district board of agriculture for said district to manage and control said association. Such appointments were thereupon made by the governor, and the appointees duly qualified and organized, and assumed control of the affairs of such purported association. Ever since then, directors of said district have been appointed by the governor of the state as the time of the old directors expired or vacancies otherwise occurred, and the directors in office have at all times managed and controlled the affairs of the agricultural association thereof except in so far as is hereinafter stated. Except for the written notice aforesaid to the governor, and what are styled "Articles of Association 6 District Agricultural Association" signed only by William Niles as chairman, and filed in the office of the secretary of state on May 20, 1880, there was no record evidence of the formation of the association at this time, but there was parol evidence sufficient to sustain a conclusion that fifty or more persons representing a majority of the counties of the district had, at a meeting held for that purpose, ordered the formation of the association. In the same year there was subscribed some thirteen thousand dollars by persons desirous of re-establishing an agricultural association and devoting the property of the old Southern District Agricultural Society to the purposes thereof. It does not appear to be controverted that by aid of the money thus subscribed and by direction of the subscribers, the title to the property in controversy was conveyed, in the year 1884, by said Isaac N. Moore to W. J. Broderick, William Ferguson and E. L. Mayberry, in trust, to convey to the Sixth District Agricultural Association upon the following trusts: "that is to say, the said land shall be held in perpetuity as a place for holding agricultural exhibitions or fairs, and shall be managed and controlled by the said association for that purpose, and also for the purpose, so far as consistent therewith, of renting or otherwise managing the said property so as to raise a revenue for meeting the expenses of holding such exhibitions or fairs, and, especially, so far as consistent with the above purposes, for the purpose of holding exhibitions of

horses, cattle, and other stock, and of the agricultural, horticultural, viticultural, mechanical, manufacturing and domestic products of Agricultural District Number Six, with a view to the improvement of all the industries in the same," being the purposes for which associations existing under the act of April 15, 1880, are expressly declared by said act to hold real estate acquired by them. The deed to such trustees, Broderick et al., provided that the conveyance to said agricultural association should be made only if the same be found to be a legally constituted association, capable of taking and holding real estate upon such trusts, and if this were not found to be the case, or if it declined to take the property on said trusts, the land should be conveyed on the same trusts to a corporation or association to be formed for said agricultural district under the laws of this state for the same purposes. On May 7, 1885, the trustees executed such a conveyance to the "6th Dist. Agricultural Association." In the year 1888, some question having arisen as to the legality of the proceedings for the formation of such association, pursuant to a call of the directors of the district, then reduced by amendment to the statute to Los Angeles, San Bernardino, and Ventura counties, acting as directors of the association, a meeting was held on March 13th for the purpose of re-organizing and forming an agricultural association for the district under the act of April 15, 1880. The proceedings had were in entire compliance with the provision of said act. Articles of association were there signed by more than the requisite number of persons from the various counties included in the district. The only respect in which these articles appear erroneous is in the statement of the name of the association, which is declared to be "Agricultural District Number Six," the act of April 15, 1880, itself prescribing the name of all associations formed thereunder as "———— Agricultural Association." This organization having been perfected, on May 29, 1888, a new deed of the said property on the same trusts was executed by said Broderick et al., as trustees, to "District Agricultural Association Number Six of California," and on January 27, 1890, another deed of the same property on the same trusts was executed by the said trustees to "Agricultural District Number Six of the State of California," it being recited in the first of these deeds that it was given to correct and to confirm the deed of May 7, 1885,

to the Sixth District Agricultural Association, and in the second that it was given for the purpose of ratifying and confirming two prior deeds whereby said trustees "pretended to convey to said second parties" said premises. The record establishes beyond a shadow of a doubt that the sole object of all these proceedings was to perfect the organization of a then existing agricultural association for such district, and to perfect the title of such association to the real property in controversy. From the time of these proceedings until the year 1897, the property was managed and controlled by the directors of Agricultural District Number Six, appointed by the governor of the state, in accord with the provisions of the act of 1880, and a subsequent act to the same effect (Stats. 1891, p. 138), which, although reducing District Six so as to restrict it to Los Angeles County alone, continued in force agricultural districts theretofore established, and made them agricultural associations under said act. By act approved February 18, 1895, the legislature added a new section, numbered $10\frac{1}{2}$, to said act of 1891, providing substantially as follows: Every such association which has heretofore issued certificates alleged to be certificates of the capital stock of such association, which have been accepted by the members thereof in lieu of certificates of membership, may elect to have a capital stock and may issue certificates of stock therefor in the same manner as private corporations. To effect such change, a meeting of the holders of the alleged certificates might be called by certain notice, such holders of the same to have one vote for each share of stock appearing in their names on the books of the association. At such meeting, should the holders of a majority of the shares of such alleged capital stock vote in favor of having a capital stock, and fix the amount thereof and the number of shares into which it shall be divided, then such corporation shall issue certificates of capital stock to the holders of such alleged capital stock, in the same proportion as such alleged stock appears in the names of such holders respectively, upon the books of such association. A copy of the proceedings must be filed with the secretary of state and the clerk of the county where such association has its principal place of business. "Thereafter such association shall be possessed of all rights and powers, and shall be subject to all the obligations and restrictions, as if it had been originally created.

a corporation with a capital stock, including the right to elect
a board of directors authorized to exercise such control of all
the property of such association" as provided in the Civil
Code relating to corporations, provided that the association
shall have no authority to sell any portion of its real estate
which may be necessary for the permanent use of such associa-
tion for the purposes of the act, and provided that where aid
is accepted by the association by vote of its elected board of
directors for the purpose of holding an annual district fair,
such fair shall be held under the control and management of
the district board of agriculture of such district; "but said
district board of agriculture shall have no other authority,
control or management of or over the property of such associa-
tion, and the authority which it may exercise over such prop-
erty shall continue only during the time occupied in holding
the said district fair, which time shall not extend over more
than one week annually." A similar provision was incorpo-
rated in the General Agricultural District Act of March 31,
1897 (Stats. 1897, p. 304), which also continued in force agri-
cultural associations theretofore established, and made them
associations under said act. The agricultural association in
District Six was of the class described in this amendment.
The evidence very clearly shows that beginning with the year
1881, it issued alleged certificates of shares of stock to various
persons who subscribed money for the purpose of re-establish-
ing an agricultural association, in proportion to the amount
subscribed, and kept a stock-book showing the stock issued and
transfers thereof from time to time. In January, 1897, acting
under this amendment, the then holders of the shares of stock
evidenced by the original certificates issued in 1881, held a
meeting after due notice, and in strict accord with the pro-
visions thereof, determined that "District Agricultural Asso-
ciation No. Six" elected to have a capital stock, the amount
thereof to be twelve thousand six hundred dollars, divided
into 126 shares of the par value of one hundred dollars each,
and assigned the same to holders of the alleged capital stock,
in the same proportion as such alleged stock appeared in the
names of such stockholders on the books of the association.
The proceedings were in full accord with the requirements of
said amendment, and copies of the record thereof were filed
in the offices of the secretary of state and the county clerk of

Los Angeles County. Thereupon the stockholders elected a board of directors, and, upon the theory that the amendment was valid, the directors of Agricultural District No. 6 appointed by the governor, a majority of whom were also stockholders and elected directors of such association, delivered to the elected board of directors all the property of the association, including the land in controversy. The directors so elected, and their successors in office, also elected by the stockholders, have ever since had possession of such property, managing and controlling the same and all proceeds thereof for the benefit of the stockholders, except during the time of the annual fairs given with state aid, for which times the portion of the land used for fair purposes was leased to the District Board of Agriculture appointed by the governor, the stockholders' board receiving as rental therefor, for the benefit of the stockholders, all receipts from gates and any and all privileges. In the latter part of 1903 and in the early part of 1904, there were on the board of directors of the Agricultural District for the first time a majority who were not stockholders of said association, and on or about July 25, 1904, this board, acting for plaintiff, demanded of defendants the possession of all said property, and an accounting of the affairs thereof, which was refused. Thereupon this action was commenced.

Upon the foregoing facts, it appears to us that the important question in the case is as to the validity of the amendment of 1895, carried into the act of 1897, purporting to authorize the issuance of capital stock by such an association, and the control and management of the property thereof by the stockholders for their own benefit through their elected board of directors.

The plaintiff is undoubtedly an agricultural association organized under the act of April 15, 1880, and is the owner of the real property in controversy for the purposes defined in said act and also in the conveyance thereof made to it. It is immaterial in this connection whether or not the proceedings had in the year 1880 were effectual to create an association under the act, or whether or not if no such association was then legally formed plaintiff was, nevertheless, a *de facto* association. Undoubtedly if the proceedings then had were ineffectual for any purpose, the proceedings had in the year 1888

were effectual to create such an association under the act of April 15, 1880. In either case it acquired the property in controversy. If it existed prior to the proceedings of 1888, it took the title under the first deed made by the trustees, that of May 7, 1885. If it did not come into existence until the proceedings of 1888 were had, it took under the deeds made by said trustees in the years 1888 and 1890. The slight difference in the name given to the association in the two proceedings and the two sets of deeds is of no moment. The act of April 15, 1880, contemplated a single association for each agricultural district, which should be a public corporation or state agency to carry on one of the objects committed to the state government by the state constitution (*People etc.* v. *San Joaquin etc. Assoc.,* 151 Cal. 797, [91 Pac. 740].) It expressly declared that any association so formed should be known and designated by the name of "———— Agricultural Association," leaving a blank for the insertion of a number or name which should distinguish it from the associations of other districts, and the same is true of the subsequent acts on the same subject. Any association formed under that act necessarily assumed the name so far as it was then declared by the act, and those forming the association had no power to provide otherwise. In the absence of other special designation by those forming or composing the association, to precede the words "agricultural association" to distinguish it from the associations of other agricultural districts, we have no doubt that the words "Sixth District" would be supplied by law by reason of the provisions of the act, and that by such name and style the said association existed, with power to sue and be sued and to purchase, hold, and lease real estate for the purposes defined in said act. (Sec. 12 of said act.) So far as the second set of deeds is concerned, the misnomer of the grantee was not fatal. The general rule is that misnomer of a corporation will not invalidate a grant or conveyance to or by it, if it appears from the instrument itself, or is shown by such evidence as is admissible upon the question, that it was the corporation intended. (Clark & Marshall on Private Corporations, sec. 52.) There can be no doubt upon the record before us that these conveyances were to the agricultural association for this district, and that any and all proceedings subsequently had by or on

behalf of the association styled "Agricultural District Number Six" or the members or so-called stockholders thereof, were had by or on behalf of the same association.

It appears to necessarily follow that the right of defendants to hold and manage the property is dependent upon the validity of the amendment of 1895, before referred to. If such amendment is invalid, the management of the association is in the hands of the district board of agriculture, which, under the provisions of the act, has "the exclusive control and management of such institutions for and in the name of the state," and has "the possession and care of all the property of the association."

It is claimed that this amendment was in violation of several constitutional provisions. Learned counsel for defendants have not attempted to reply to the argument of plaintiff's counsel in this behalf, except in regard to the claim that the Amendatory Act is invalid for the reason that it is in violation of the constitutional provision that every act shall embrace but one subject which shall be expressed in its title. It is unnecessary to discuss this objection in view of our conclusion that the amendment is clearly unconstitutional for another reason.

There can be no question as to the *status* of any such association and the character of the property held by it, at the time of the enactment of this amendment. This matter was exhaustively discussed and decided in a very recent case (*People etc.* v. *San Joaquin etc. Assoc.*, 151 Cal. 797, [91 Pac. 740].) It was, as expressly declared by the acts of both 1880 and 1891, a "state institution"—a public agency of the state, which was within the exclusive management and control of the state and charged with the performance of a part of the functions of state government—a public corporation formed for the government of a portion of the state in the matter of the improvement of the material industries therein. Its property was public property dedicated to the purposes of such public corporation, and accepted therefor by the state. There was nothing in the law relative to any such association which authorized it to have a capital stock or to issue certificates of stock, as is fully recognized in the amendment of 1895, or which contemplated a retention of any interest in or control of any portion of such property by the persons forming such association or dedicating money or other property to its purposes.

It is provided in section 31 of article IV of the constitution that the legislature shall have no power "to make any gift, or authorize the making of any gift, of any public money or thing of value, to any individual, municipal or other corporation whatever," except as prescribed in section 22 of the same article, which section has no application here. It appears to us, in view of the facts already stated, that the amendment of 1895 is clearly in conflict with this provision. The plain practical effect thereof was to authorize the formation within the association constituting a public corporation, by persons having no interest in the property of the association, of a private corporation, and the transfer, without consideration, of all the property of the association to this private corporation to be managed and disposed of by it for its own use and benefit, in the same manner that property of private corporations is ordinarily managed and disposed of, subject only to the limitation that it should have no authority to sell any portion of the real estate which may be necessary for the permanent use of the association for the purpose of the act, which we take to be the real property necessary for the purpose of holding annual exhibitions of horses, etc., and also subject to the limitation that if it elect to receive aid from the state for any such annual exhibition, it must allow such exhibition to continue for not exceeding one week annually, to be held under the control and management of the state, through its district board of agriculture. If it elected not to receive such aid from the state, it was apparently given authority to exclude the state officers from all management and control even for the week of the annual fair, and to hold the same at all times for its own use and benefit. In the case at bar, it assumed the right, while accepting such state aid, to receive for its own benefit the profits of such annual fairs, and also the right to declare dividends for the benefit of its stockholders, and we are not warranted in holding that in either of these cases was it exceeding the powers attempted to be conferred by the amendment. Certainly the power to declare dividends from the surplus profits of the corporation was one of the powers so attempted to be conferred. To our minds, the amendment is a clear case of an attempted gift of public property, and therefore void.

All of the defendants, except the defendant John C. Lynch, pleaded that the action was barred by certain sections of the Code of Civil Procedure. As we have seen, however, the property was held in trust by a state institution or public agency for a public use, which public use has not been discontinued or abandoned by any lawful act of public authority. As to such property it is well settled that the statute of limitations has no application. As heretofore said: "It is immaterial where the title—that is, the record title—is held, whether by the state at large, or by a county, or by some municipal department or other official body. There can be no adverse holding of such land which will deprive the public of the right thereto, or give title to the adverse claimant, or create a title by virtue of the statute of limitations. The rule is universal in its application to all property set apart or reserved to the public use, and the public use for which it is appropriated is immaterial." (See *People etc.* v. *Kerber,* 152 Cal. 731, [93 Pac. 78], and cases there cited.)

The judgment against the defendants for the sum of $5584 was based upon the finding that said defendants "had in their hands of the money received and collected by them as the rents, issues and profits of said real property, over and above all expenditures made by them for the care and maintenance thereof, the sum of $5584." This finding is, of course, a sufficient support for the judgment in regard thereto. It does not appear to be urged in the brief of learned counsel for defendants that this finding is not supported by the evidence, except in so far as defendant John C. Lynch is concerned. It did clearly appear that whatever amount was so on hand was in the hands and under the control of the so-called private directors, elected by the stockholders. Lynch, while as a stockholder asserting the claims of the stockholders and the elected board of directors, denied in his answer that he was a director, and the evidence showed without conflict that although Lynch was originally such a director, he had ceased to be such, and at the time this proceeding was instituted was only a holder of some of the stock which had been issued. The evidence, therefore, does not warrant this finding as to Lynch. It is admitted by the brief of defendants that the other defendants were directors elected by the stockholders, and as such were in possession of all property claimed by the so-called Agricultural District No. 6.

Under the views we have declared, the material findings of the trial court are sustained by the evidence, except in so far as defendant Lynch is found to be in possession with his co-defendants of the sum of $5584 belonging to plaintiff.

In so far as the judgment is against defendant John C. Lynch for $5584 or any part thereof, it is reversed, Lynch to recover such costs of appeal as he has personally incurred. In all other respects the judgment and order denying a new trial are affirmed.

Shaw, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.