**UNITED STATES of America,
Plaintiff-Apepllee,**

v.

**Claude S. GOSSETT et ux., Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles D. WILLIAMS et al., Defendants-Appellants.**

**Nos. 23162, 23163.**

United States Court of Appeals
Ninth Circuit.

Sept. 11, 1969.

Richard F. Harless, Phoenix, Ariz., for Gossett only.

Robert A. Stafford, Claremont, Cal. (argued), for Gossett & Williams.

Edmund B. Clark (argued), Glen E. Taylor, Acting Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., Wm. Matthew Byrne, Jr., U. S. Atty., Thomas H. Coleman, Asst. U. S. Atty., Thomas C. Lynch, Atty. Gen., Jay L. Shavelson, Asst. Atty. Gen., Warren J. Abbot, Deputy Atty. Gen., Los Angeles, Cal., for appellee.

Before MERRILL and ELY, Circuit Judges, and KILKENNY, District Judge.*

KILKENNY, District Judge:

Before us for review is the action of the District Court in granting summary judgments to plaintiff. Discovery procedures, including affidavits and interrogatories, were extensively employed. We affirm.

Involved is the title and right to possession of lands located in California, west of the present flow of the Colorado River. The runaway waters of this once unpredictable and highly destructive river have left in their wake a substantial body of law. For example, Arizona v. California, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963); United States v. Arizona, 295 U.S. 174, 55 S.Ct. 666, 79 L.Ed. 1371 (1935); Arizona v. California, 298 U.S. 558, 56 S.Ct. 848, 80 L.Ed. 1331 (1936). The river's catastrophic force was harnessed and its channel stabilized in 1935 by the completion of giant Hoover Dam.

The lands here under scrutiny were ceded to the United States by Mexico in 1848 by the Treaty of Guadalupe Hidalgo, 9 Stat. 922. The river in the area with which we are concerned is navigable, but non-tidal. California was admitted to the Union in 1850 and thereby acquired ownership of the bed of the river, west of the middle of the channel.[1] The land claimed by the Gossetts is located immediately south of the city of Blythe. The Williams land is located approximately 20 miles north of that city. The Williams land, except for a slough, is not within the present flow channel of the river, while the easterly edge of the Gossett land is approximately 3500 feet west of the present channel. Williams has been in possession since 1957, Gossett since 1952. Each claims under a quitclaim deed, from a stranger to the title.

The Boulder Canyon Project[2] was authorized by the Act of Congress dated December 21, 1928, 45 Stat. 1057. By Executive Orders dated February 19, 1929, and October 16, 1931, each issued pursuant to the Act of June 17, 1902, 32 Stat. 388, the lands here in dispute were withdrawn from public entry. Without question, these Orders were issued in implementation of the exigencies created by the Boulder Canyon Project. The United States, by an undisputed affidavit, shows that it has never disposed of the property in question. Neither appellant attempted to trace title to the United States.

Early in the proceedings, the appellants claimed title through the state of California. Thereupon, the Court entered an order joining that state as a party defendant. The state disclaimed all title in, or right to possession of, the property. Subsequently, the United States moved for judgment on the pleadings or, in the alternative, a summary judgment.[3] The Court treated the mo-

---

* The Honorable John F. Kilkenny, United States District Judge for the District of Oregon, sitting by designation.

1. 9 Stat. 452. United States v. California, 332 U.S. 19, 41–42, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947).

2. 43 U.S.C. § 617 et seq.

3. F.R.Civ.P. 12(c). " * * * If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

tion as one for a summary judgment, as evidenced by its consideration of all of the records and files. The motion was allowed and the judgment is the subject of this appeal.

Appellants' main contention seems to be that title was once lodged in the state of California. They argue that the land was below the high water mark of the river at the time California entered the Union and remained part of the bed and below the high water mark until 1935 when Hoover Dam was completed. In some mysterious manner, not disclosed by the record, they claim title from California. In the final analysis, our decision must rest on whether the record discloses a genuine issue of material fact.

To properly approach this problem, we must apply and give full effect to the 1963 Amendment to Rule 56(e).[4] The Advisory Committee notes show that the amendment was added to overcome a line of Third Circuit cases which severely crippled the effective use of the summary judgment device. These cases consistently held that summary judgment could not be granted if an issue of fact was raised by the pleadings. *Frederick Hart & Co. v. Recordgraph Corp.,* 169 F.2d 580 (3rd Cir. 1948); *United States for Use of Kolton v. Halpern,* 260 F.2d 590 (3rd Cir. 1958); *Jamison v. Pennsylvania Salt Mfg. Co.,* 22 F.R.D. 238 (W.D. Pa.1958). The Delaware District Court joined the parade in 1961. *United States for Use and Benefit of Nobles v. Ivey Bros. Constr. Co.,* 191 F.Supp. 383 (D. Del.1961).

The obvious purpose of the amendment was to require a party opposing a summary judgment to set forth specific facts showing a genuine issue for trial, thus strengthening this procedural tool as a means to eliminate sham issues of fact and, in this manner, avoid otherwise lengthy trials. *United States*

*v. Prince,* 348 F.2d 746 (2d Cir. 1965); *Neff v. World Publishing Co.,* 349 F.2d 235 (8th Cir. 1965); *Jacobson v. Maryland Casualty Co.,* 336 F.2d 72 (8th Cir. 1964), cert. denied 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965). Our own analysis of the '63 amendment was recently outlined in *McGuire v. Columbia Broadcasting System, Inc.,* 399 F.2d 902, 903–905 (9th Cir. 1968), thusly: " * * the showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law. The question to be resolved is whether there is 'sufficient evidence supporting the claimed factual dispute * * * to require a jury or judge to resolve the parties' different versions of the truth at trial.' " Of similar import is *First Nat'l Bank of Ariz. v. Cities Service,* 391 U.S. 253, 288–289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

All parties agree that on admission of California to the Union, the title to the land either remained in the United States or passed to California if located in the bed of the Colorado. From time to time thereafter, the boundary between the land owned by the United States and land owned by the state of California moved east and west as the bed of the river wandered back and forth. *Beaver v. United States,* 350 F.2d 4 (9th Cir. 1965).

There is no contention that appellants' claims fall within the purview of the Color of Title Act, 43 U.S.C. § 1068 et seq. For that matter, on the record before us, such a claim could not be asserted. *Beaver v. United States, supra,* p. 10.

Appellants argue that at least a substantial portion of the property was the

---

4. F.R.Civ.P. 56(e). " * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

bed of the Colorado River when California was admitted and remained so until the completion of the Dam. Then they assert that a plaintiff in ejectment actions, such as these, must stand on the strength of his own title, rather than on the weakness or want of title in the defendants. Citing McGuire v. Blount, 199 U.S. 142, 26 S.Ct. 1, 50 L.Ed. 125 (1905); City & County of San Francisco v. Brown, 153 Cal. 644, 96 P. 281 (1908), among others, appellants urge that their titles might be traced to the state of California and that they were entitled to jury trials on the alleged issues.

■ The rule employed by appellants is not of universal application. An exception to the rule, on a record such as we have before us, is well stated by the United States Supreme Court in Greenleaf's Lessee v. Birth, 6 Pet. 302, 312, 8 L.Ed. 406 (1832). There, the Supreme Court held that it was not incumbent on a plaintiff who had *prima facie* good title to establish the non-existence of an outstanding title, but it was the duty of the defendant to make known the source of his title. In the absence of proof to the contrary, the legal presumption is that the title remains in the United States. Patterson v. Tatum, 18 Fed. Cas. p. 1331, No. 10,830 (C.C.Cal.1874). The fact that the Executive Orders, withdrawing this land from public entry, were issued in 1929 and 1931 is convincing evidence that the Government was claiming ownership and exercising dominion over the property in those years. Here, the Government had *prima facie* title.

Be that as it may, the procedural rule on which appellants rely is now confronted with the positive directives of the 1963 Amendment to Rule 56(e). No longer may a defendant, under Federal practice, play a game of hide and seek, refuse to show his hand, and thus place on the trial court and the opposing party, the unnecessary burden of facing a long, arduous and expensive trial. The onus is now placed on a defendant, under circumstances such as these, to come forward with evidence showing the existence of a genuine issue of material fact.

■ Assuming, *arguendo*, that title once rested in the state of California, still no attempt is made to show how appellants obtained title from that state. The title could only be obtained by one of two means: (1) by grant from the state, or (2) possibly by adverse possession. The record before us is completely devoid of evidence even remotely pointing to a grant from the state of California. The fact that California disclaims all ownership to the property is of great significance. We may assume that official duty has been regularly performed and that The Attorney General of the state, who is charged with the duty of defending the state's title to land,[5] would not violate his duty and file an answer disclaiming all title in, or ownership of, the property. Even if California had not been joined as a party and had not filed a disclaimer, appellants would still be confronted with the requirements of the 1963 Amendment. If there exists a patent, or other evidence of a grant from California, the appellants, under the requirements of the '63 Amendment, had the burden of coming forward with such proof. This they have failed to do.

■ Appellants vaguely suggest that title might have been acquired by adverse possession. Again, compliance with the '63 Amendment is not established by suggestion or creation of suspicion. An issue of material fact must be created. They do not rely on this theory in their briefs, but are content to rest on the common law doctrine that the plaintiff in ejectment must rely on the strength of his own title, rather than on the lack of title in defendants. Under California law, a claimant has a heavy burden in establishing title by adverse possession. Dimmick v. Dimmick, 58 Cal.2d 417, 24 Cal.Rptr. 856, 374 P.2d 824 (1962).

5. California Gov.Code, § 12512; In re Quinn's Estate, 156 Cal.App.2d 684, 320 P.2d 219 (1958).

Aside from the above, the California courts have uniformly held that land owned by the state, or its subdivisions, which is dedicated or held for public use is not subject to loss by adverse possession. City of San Diego v. Cuyamaca Water Co., 209 Cal. 105, 287 P. 475 (1930); City of Oakland v. Burns, 46 Cal.2d 401, 296 P.2d 333 (1956); Sixth Dist. Agr. Ass'n v. Wright, 154 Cal. 119, 97 P. 144, 149 (1908) (Tidelands); City of Los Angeles v. Anderson, 206 Cal. 662, 275 P. 789 (1929) (Tidelands). Of course, adverse possession does not run against the United States. United States v. California, 332 U.S. 19, 39–40, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947); Utah Power & Light Co. v. United States, 243 U.S. 389, 408–409, 37 S.Ct. 387, 61 L.Ed. 791 (1917). In the record before us there is not a scintilla of proof that the property was used in a manner which would permit the acquisition of title by adverse possession.

Many other issues of fact are argued by appellants. These we brand as non-genuine and immaterial. The same may be said of most of the alleged issues of law; for example, the issue of whether California owns, or owned, to the high or the low water mark on navigable streams. California had a choice and adopted the low water mark. Craig v. White, 187 Cal. 489, 202 P. 648 (1921); Anderson v. Trotter, 213 Cal. 414, 2 P.2d 373 (1931); City of Los Angeles v. Aitkin, 10 Cal.App.2d 460, 52 P.2d 585 (1935); Crews v. Johnson, 202 Cal.App. 2d 256, 258, 21 Cal.Rptr. 37 (1962). Cases such as Churchill Co. v. Kingsbury, 178 Cal. 554, 174 P. 329 (1918); Yolo Water & Power Co. v. Edmands, 50 Cal. App. 444, 195 P.2d 463 (1920) and Perry v. State, 139 Cal.App.2d 379, 293 P.2d 480 (1956) either involve gratuitous statements (*Churchill*), elimination of the issue (*Yolo Water*), or tidal waters. California owns to the low water mark.

If, in fact, appellants were invited by an agency of the Government to make improvements and expend money in improvements on the property, the remedy lies with the Congress, rather than the Courts.

We conclude that appellants have presented no genuine issue of material fact and that the judgment of the lower court must be affirmed.