[No. 18107.  *En Banc.*  June 26, 1925.]

# THE STATE OF WASHINGTON, *Respondent*, v. AMERICAN FRUIT GROWERS, INCORPORATED, et al., *Appellants.*[1]

APPEAL (222)—NOTICE—FILING PROOF OF SERVICE. Under Rem. Comp. Stat., § 7373, requiring a notice of appeal in proceedings under the water code to be served and filed within sixty days from the entry of judgment, the service of notice of appeal within the statutory period is jurisdictional; but failure to file the notice within that time is an irregularity only, and appeal filed on the 61st day will not be dismissed.

WATERS AND WATER COURSES (27)—RIPARIAN RIGHTS—IRRIGATION AND AGRICULTURAL PURPOSES—BENEFICIAL USE OF WATERS. Findings that riparian lands were not entitled to an apportionment of waters for irrigation as agricultural lands are sustained, where they were chiefly valuable for their timber, and had been held for a long time in private ownership for such value; especially where the waters of the stream had not been put to any beneficial use for irrigation purposes.

SAME (48)— SPRINGS — SEEPAGE WATERS — AUGMENTED FLOW ·OF STREAM—RIGHT TO USE. Where the waters of a stream are augmented by seepage water from springs upon the lands of a riparian owner, which he can not use to advantage by gravity, and which he allows to flow into the stream, he should be awarded the right to take from the stream, higher up, an equal amount of water, less transportation loss, to be put to a beneficial use upon any part of his riparian lands, where no injury or loss results to others.

SAME (48)—SPRINGS—SEEPAGE WATERS—EXTENT OF USE BY LAND-OWNER. Seepage waters upon riparian lands, which come from a spring and reservoir on the land of another, belong to such other and not to the riparian owner.

SAME (27)—RIPARIAN RIGHTS—IRRIGATION AND AGRICULTURAL PUR-POSES—BENEFICIAL USE—BURDEN OF PROOF. A riparian owner has the burden of showing his intention to bring more land under culti-vation within a reasonable time, and failing to ·do so, is entitled only to sufficient water to irrigate the land now under cultivation.

SAME (10, 37)—APPROPRIATION—DIVISION—PRESCRIPTIVE RIGHTS—PRIORITIES. Priority of rights of appropriation of water by various classes are not controlling against prescriptive rights.

[1]Reported in 237 Pac. 498.

Cross-appeals from a judgment of the superior court for Chelan county, Grimshaw, J., entered December 2, 1922, in favor of certain defendants, in an action to determine the right to the use of the waters of a stream, tried to the court. Reversed.

*D. A. Shiner,* for appellants Landreth Brothers Lumber Company *et al.*

*S. H. Kelleran,* for respondents and cross-appellants Knouf *et al.*

*Barrows & Hanna,* for respondents and cross-appellants Cammack *et al.*

*O. P. Barrows,* for respondents and cross-appellants Nelson *et al.*

*W. O. Parr, Hughes & Wallace, Fred M. Kemp,* and *Corbin & Easton,* for respondents Lockwood Ditch *et al.*

*The· Attorney General* and *Fred J. Cunningham, Assistant,* for respondent State of Washington.

*Reese H. Voorhees, amicus curiae.*

BRIDGES, J.—This is an action under the water code, §§ 7364, 7377, Rem. Comp. Stat. [P. C. §§ 7216, 7228], to determine the rights to the waters of Stemilt creek, in Chelan county, of several hundred landowners, but a few of whom have appealed.

The stream is some twelve miles in length and drains about forty square miles of territory, some of which is from 3,000 to 6,000 feet above sea level. All of the land tributary to the creek is arid, but much of it is capable of producing large farm crops when properly irrigated. The creek has its source in the mountains and empties into the Columbia river near the city of Wenatchee. Much of the land in the lower stretches of the creek is at present, and for a good many years has been, in a high state of cultivation. During at

least a part of the irrigating season there is not sufficient water in the creek to properly irrigate all of the agricultural and irrigable lands tributary to it. It appears that many of the lands in controversy are non-riparian to the creek and have been supplied with water by means of diverting ditches.

The controversy was referred to the Honorable Marvin Chase, state supervisor of hydraulics, who made findings and a report, and attached thereto a map showing the lands and ditches involved in the determination of the water rights. For the most part, the trial court adopted the findings of the referee, but in some instances refused to do so. Landreth Brothers Lumber Company and the Inland Lumber Company have joined in the appeal and we shall henceforth refer to them as Landreth Brothers. There were also a number of cross-appeals.

A motion has been made to dismiss the cross-appeals of J. F. Black and C. B. Knouf and wife, for the reason that their notices of appeal were not filed within sixty days after the date of the entry of the decree. The statute with reference thereto reads as follows:

"Appeal may be taken to the supreme court from such decree in the same manner as in other cases in equity, except that notice of appeal must be both served and filed within sixty days from the entry thereof." Laws of 1917, p. 458, ch. 117, § 23 [Rem. Comp. Stat., § 7373].

The record shows that these notices of appeal were served within the 60-day period, but were not filed with the clerk of court until the sixty-first day.

Our general appeal statute requires that the notice of appeal be served within 90 days from the date of the entry of the decree or judgment, and that within five days after the service, the notice, together with the proof of service thereof, shall be filed with the clerk

of court. Sections 1718, 1719, Rem. Comp. Stat. [P. C. §§ 7292, 7293]. Under this statute we have several times held that, where the notice of appeal was served within the statutory period but was not filed within the time mentioned by the statute, the appeal would not be dismissed. In *Reynolds v. Reynolds,* 42 Wash. 107, 84 Pac. 579, we said:

"It is conceded in this case that a proper notice was served within time, and that proof thereof was subsequently made, but not within time. This latter statute [Laws 1899, page 79] was evidently intended to cover such cases. Since the appeal appears not to have been delayed, or respondents injured in any way, the motion to dismiss is denied without terms."

In the case of *Seargeant v. Russell,* 110 Wash. 216, 118 Pac. 466, the same question was before us. There the notice of appeal had been served within the statutory period, but the proof of service was not made until a short time before the case was heard in this court. On the authority of *Reynolds v. Reynolds, supra,* we refused to dismiss the appeal.

In *Gazzam v. Young,* 114 Wash. 66, 194 Pac. 810, the same question arose and we made the same ruling.

The substance of the holdings of this court is that service of a notice of appeal within the statutory period is jurisdictional, but the failure to file the notice within the statutory period is merely an irregularity and is not jurisdictional.

Applying the doctrine of the cases cited to the facts and the statute involved, we deny the motion to dismiss.

### Landreth Brothers' Appeal.

The Landreth Brothers Lumber Company and Inland Lumber & Timber Company, joint appellants, own several sections of land on the upper stretches of Stemilt creek. It seems to be conceded that these lands

are riparian to the creek. They are for the most part so-called Northern Pacific lands and were segregated from the public domain in 1884. They were originally bought, and for a long time have been held, for the standing timber thereon. This timber was, at the time of the trial and for sometime prior thereto, being logged, but much of it remains untouched. The lands are at an elevation of from 3,000 to 5,000 feet above sea level. Snow and frost come early in the fall and leave late in the spring. The trial court held that these lands were not agricultural and had no riparian rights for that use, and were awarded water for stock and domestic use only.

There is testimony to the effect that, because of the extreme elevation of these lands, their distance from any market, the difficulty of transportation, the expense of clearing and getting water on the land, none of it can be successfully used for agricultural purposes. There was testimony that the snow and frost come early in the fall and leave very late in the spring, and that it frosts nearly every night of the year. On the contrary, there is testimony showing that, while but a few small patches of this land have been cultivated, and that largely for domestic purposes, much of it is of such character that when the timber is removed and the land cleared it can be successfully used for agricultural purposes.

It is, of course, always a question of fact whether certain land may be considered as agricultural, and witnesses will naturally differ in their opinions, because almost any kind of land will raise some kind of a crop. The trial court is very favorably situated to judge correctly of matters of this character, and we should not overrule his judgment unless we are convinced that the weight of the testimony is against him. A reading of the abstract of the testimony fails to con-

vince us that this land can or ever will be successfully used for farming purposes.

But there is another matter that should be considered in this connection. It is conceded that these lands have been held from the beginning of private ownership for the value of the timber upon them and not for agricultural purposes. Substantially no effort has been made to cultivate those from which the timber has been removed. There is but little testimony tending to show that there is any present intention on the part of appellants ever to farm this land or any part of it. In *Brown v. Chase*, 125 Wash. 542, 217 Pac. 23, we stated that this court had not only modified the common law doctrine as applied to irrigation, but had engrafted upon it "the necessity of beneficial use by the riparian owner," and that "waters of non-navigable streams in excess of the amount which can be beneficially used, either directly or prospectively, within a reasonable time, on or in connection with riparian lands, are subject to appropriation for use on non-riparian lands." In other words, the riparian owner, before he has any rights to protest, must, with reasonable certainty, show that, either at present or within the near future, he will make use of the water for irrigation purposes. This proof is lacking. It is entirely problematical whether these lands can or will be used for agricultural purposes.

Under all the circumstances, we believe the trial court was right in coming to the conclusion he did.

CROSS-APPEALS OF CHASE, BROFF, CAMMACK AND
ROSE & NELSON.

The supervisor of hydraulics, as referee, found that there were various springs located on some of the lands owned by these cross-appellants, the waters of all of

which found their way into Stemilt creek. He also found that,

"The water flowing from such springs into Stemilt creek belong to that stream and should be treated as a tributary. However, any increase in flow after irrigation is commenced is undoubtedly return seepage water from reservoirs, ditches and irrigation and is the property of persons owning the land on which the springs are located, provided the water can be appropriated and put to beneficial use."

It will thus be seen that the referee determined that such portion of the springs as represented seepage water belonged to the person upon whose lands the springs originated, provided he could beneficially use them.

The court, for the most part, adopted these conclusions of the referee, but added certain limitations concerning the use of these seepage waters, which limitations are involved in these cross-appeals. It appears from the testimony that, for many years, it has been the custom of these cross-appellants to ascertain the amount of seepage water coming from these springs and allow it to flow into the main creek, and to then go some distance up the stream and take therefrom an amount of water equal to the seepage that has been allowed to flow into the creek. If they must take this seepage water from the spring or from the main creek at the point where the spring empties into it, they would be required to use some mechanical means for elevating the water; but if they can go further up the stream and take out an equal amount of water, they can convey it to their lands and irrigate by means of gravitation, thus saving a very great expense. A part of the decree provides as follows:

"That the increase in flow of such springs after the irrigation season commences, due to returned seepage water from reservoirs, ditches and irrigation, is the

property of the persons owning lands on which such springs are located, provided, such particular increase can be appropriated and put to beneficial use *upon the lands where such springs arise;* provided, however, that the defendants [these cross-appellants] claiming such increase from springs, and all persons claiming by or through them, be and they are *hereby enjoined from taking such increase or any other or different waters out of the stream further up by way of substitution.*"

The decree also permits the use of this seepage water only on land upon which the springs arise.

The chief complaint of the cross-appellants is concerning the last mentioned paragraph of the decree and those portions quoted which have been put in italics. Evidently it was the intention of the referee that, under his supervision as supervisor of hydraulics, the cross-appellants would be allowed to permit this seepage water to flow into the main creek, and that they might take from the creek at some point above, an amount of water equal to the seepage which has flowed into the creek, and that they each might use such water, not alone upon the land upon which the springs arise, but upon any other lands owned by them on which a beneficial use of the water could be made.

If these cross-appellants have the right to use this seepage water and they permit it to augment the flow of the main creek, then it would seem but just and equitable that they should be permitted to take an equal amount of water, less transportation loss, from some point higher up the creek, from which point it can be conveyed to their land by gravity; provided, of course, that by so doing they do not injure or interfere with the rights of anyone else. There is nothing to show that by so doing any other rights will be trampled upon. The following are some of the cases tending to support this view: *Kidd v. Laird,* 15 Cal. 162; Weil on

Water Rights, Vol. 1 (3d ed.), § 504 *et seq.; Osborne v. Chase,* 119 Wash. 476, 205 Pac. 844.

We are therefore of the opinion that the decree should be so modified as to permit these several cross-appellants to take their spring water from the stream at any point above the place where the spring flows into the creek, provided, that such taking have the approval of the state supervisor of hydraulics.

We are also of the opinion that that portion of the decree which limits the use of these seepage waters to the land upon which the springs arise is erroneous. If the several cross-appellants have a right to use this seepage water they ought to have a right to use it in such a manner as would be most beneficial to them, including the right to its use upon any lands owned by them, and this doctrine cannot interfere with the rights of others. *Osborne v. Chase, supra; State v. Anderson,* 129 Wash. 9, 224 Pac. 29; §§ 3 and 39 Water Code [Laws of 1917, pp. 447, 465].

In this connection it ought to be stated that there has been no appeal from that portion of the decree which gives to these various cross-appellants the right to use the increased or seepage water from these springs. Consequently, the correctness of the decree in that regard is not before us and we do not discuss that question.

### Knouf's Cross-Appeal.

This appellant owns a quarter-section in each of sections 11 and 12, township 21, the one being immediately north and the other immediately south of the creek. He raises several objections to the decree. In the numerous briefs filed in this case, we have been unable to find any answer or reply to the contention of this cross-appellant. Several of the parties joined in a motion to dismiss the appeal of this cross-appel-

lant (which motion we have heretofore denied), and this situation probably accounts for the failure of any person to present answering briefs or argument.

He has two springs located on the land in section 11. Their waters are nothing but seepage because the springs do not start to run until after the reservoir on his land has been filled and the irrigation season started, and they cease running when the water is taken out of the reservoir. What we have said in the cross-appeal of *Chase et al.* is applicable here.

A third spring of like character is on section 14, owned by Rose & Nelson. This cross-appellant claims the right to use those waters (denied him by the trial court) because he claims they come from seepage from his reservoir, and also because of having obtained a prescriptive right. If it be conceded (which we think is not proved) that this spring is the result of seepage from his reservoir, that fact would not give him a right to the waters; the spring is actually on the land of another and the water belongs to that other.

Nor does the testimony, in our opinion, show that this cross-appellant has obtained any prescriptive rights. We think the court's ruling with reference to this third spring is correct.

Cross-appellant next complains that notwithstanding his land in section 11 is a part of the Northern Pacific grant and was, therefore, segregated from the public domain in 1884 and is riparian to the creek, his 160 acres therein are awarded but ten inches of water (other than that obtained from the springs), and that while he is put in class three, his water rights are made subject to the rights of persons in classes five, six and seven.

He seems to concede that the amount of water given him is sufficient to irrigate such land as he now has under cultivation, but contends that, under our previ-

ous cases, he is entitled to be awarded water for such lands as he may develop in the near future. The trouble with cross-appellant's position, it seems to us, is that he has not made any showing that he intends to develop more of his land in this section; at least, he has not called our attention to any such testimony and we have not been able to find any. If he desired water for land to be developed in the near future, the burden was on him to show that he intended to, and would, within a reasonable time, bring more of his land under cultivation and would have use for such increased amount of water. In this he has failed. He is entitled to only such water as he needs for present purposes.

But he complains that even these ten inches of water awarded to him are made subservient to the rights of landowners put in classes five, six and seven, he being in class three. There is nothing in the record to show why the court made this provision. Cross-appellant suggests that it may have been on account of alleged prior appropriations made, or prescriptive rights obtained, by those in the classes mentioned. We will not discuss the testimony on these two questions. If it were conceded that classes five, six and seven do not have superior rights because of prior appropriations, yet we are of the opinion that the testimony shows a prescriptive right. We are therefore content to allow this provision of the decree to stand.

Cross-appellant further contends that the court did not give him any water for his homestead in section 12 (except spring water). He contends that, ever since 1905, he has been taking water from the spring to irrigate this land. It seems to us, however, that cross-appellant is mistaken in asserting that the court has not awarded him any water for this land. It and that in section 11 were placed in class sixteen where the court awarded 48 miners' inches to be used upon both

tracts. Such amount was to include that previously awarded him as a member of class three. We have been unable to find any testimony indicating that the cross-appellant has any intention or is making any effort to increase his agricultural acreage in this section. We will let this portion of the decree stand.

### Cross-Appeal of J. F. Black.

He owns practically all of section 21, township 21. What is called the middle fork of Stemilt creek runs through it. It is Northern Pacific land and was, therefore, segregated from the public domain in 1884. He has some 40 acres under cultivation. It has a very considerable elevation and there is a serious doubt whether the land can be successfully cultivated. For the most part, his 40 acres of cultivated land have been dry farmed, but a few acres of it have been irrigated by water taken from the middle fork. There are seven springs on the land. The testimony does not show whether these are so-called live springs or the result of seepage. The court placed him in the third class and gave him 20 miners' inches of water, and also the right to use the water from the springs. This appeal is like that of cross-appellant Knouf in that none of the parties have filed any answer brief.

The only complaint he makes is that he has not been given sufficient water. He concedes that the amount given him is enough for present purposes, but contends that about 250 to 300 acres of his land are subject to cultivation. While the testimony shows that much more of this land might be put under cultivation and is so located that it would be irrigable, yet there is nothing that we can find that shows that cross-appellant has any intention of putting any more of this land under cultivation. The showing is that it is fit for cultivation, but not that there is any intention to make

further development. When all the facts are considered, it seems to us that the court's award was reasonably liberal. The 20 inches allowed are sufficient to irrigate the land now cultivated, and the water from the springs will be sufficient to take care of considerable additional lands should they be brought under cultivation.

### Appeal of S. A. Chisholm.

The sufficiency of this notice of appeal is very questionable. Apparently no attorney represented this appellant in this court. We permitted him to argue his own case at the hearing before us. He does not present any abstract of the testimony. However, we have assumed the notice of appeal is sufficient and have overlooked the other defects and have read the brief and the testimony.

The trial court placed him in class thirteen in connection with the enlarged Perry ditch. These are substantially the rights that the hydraulic engineer, as referee, gave him. He contends that he should have been placed in a much earlier class.

Such study as we can give this appeal without the aid of briefs by attorneys fails to convince us that the trial court erred. For this reason we are content to let his decree in this respect stand.

We are indebted to the Honorable R. H. Voorhees for an elaborate and instructive *amicus curiae* brief and argument wherein he criticizes the holding in the case of *Brown v. Chase, supra*. We are convinced that the doctrine of that case is right and will work for the public benefit.

The judgment is reversed, and the cause remanded for further proceedings in accordance herewith.

Tolman, C. J., Fullerton, Parker, Main, Mitchell, Holcomb, and Askren, JJ., concur.