[No. 23502.  Department One.  March 18, 1932.]

FELIX L. LITKA et al., Respondents, v. THE CITY OF ANACORTES, Appellant.[1]

[1]Reported in 9 P. (2d) 88.

260

*Ben Driftmier,* for appellant.

*Thomas Smith* and *James G. Smith,* for respondents.

BEELER, J.—The respondents own real property bordering on lake Campbell, together with the riparian rights. Lake Campbell is a comparatively small body of water, embracing an area of approximately 320 acres, and is non-navigable. Its average depth is estimated to be from eight to ten feet. The respondents acquired the property some fifteen years ago, and soon thereafter they constructed a dwelling house, a bath house, several cabins and a dock. They operated a small store, served meals, rented boats for hire, conducted a bathing beach, camp ground, had houses and cabins for rent throughout the year to hunters, fishermen and bathers. They used their property almost exclusively as a pleasure resort. It has no value for agricultural purposes.

In 1924, the city of Anacortes established a pumping station at the lake for the purpose of taking or pumping water therefrom to be used in connection with its water system. In 1926, the city constructed a dam at the lake's outlet, thereby raising the level of the lake, and in the following year the height of the dam was increased, thereby further raising the lake level. In 1928, the city began pumping a considerable quantity of water from the lake, which continued throughout 1929 and 1930, with the result that, by January 1, 1931, the lake was practically drained, or, as some of the witnesses stated, "it was practically a *mud flat.*" During

1931, the city dismantled its pumping station and discontinued appropriating water from the lake.

The respondents in their complaint alleged that the appellant, in 1926 and 1927, went upon lake Campbell and established a water pumping station "without exercising its power of eminent domain." It was further alleged that, within two and a half years prior to January 1, 1931, the appellant proceeded to pump the water from lake Campbell,

" . . . so that the lake is now without water, and has been reduced to merely a mud pit, and it is impossible for these plaintiffs to reach water or to have the same from the said lake for domestic use or for any other or further purposes for which they were using the same, to-wit: for domestic use, irrigating, mooring boats, fishing, bathing, water sports, boating, and by said defendant's acts and conduct in appropriating property belonging to these plaintiffs, for its own use, without compensation or condemnation, these plaintiffs have suffered great and irreparable loss and damage; . . . that plaintiffs were making an annual profit prior to the destruction of plaintiff's property by the defendant in excess of $6,000."

The complaint further alleged that their property had a reasonable market value of the sum of twenty-five thousand dollars, and that, after the lake was drained, the market value of their property was not to exceed fifteen hundred dollars. They prayed for judgment in the sum of $23,500.

The appellant in its answer admitted that it had established a water pumping station on the lake, and had appropriated water therefrom for its use. In its answer, it denied that it "caused any *permanent* damage," and alleged that, "if any damage was caused thereby, the same was only *temporary.*" It denied that the reasonable market value of respondents' property "was the sum of twenty-five thousand dollars or *any other sum in excess of ten thousand dollars.*"

The reply placed in issue the affirmative matters contained in the answer. Upon these issues, the cause was tried to the court and a jury, and resulted in a verdict in favor of the respondents in the sum of seven thousand dollars. Appellant's motions for judgment notwithstanding the verdict, or, in the alternative, for a new trial, being overruled, judgment was entered on the verdict, and this appeal followed.

Art. I, § 16, of the state constitution provides:

"No private property shall be *taken* or damaged for public or private use without just compensation having been first made, or paid into court for the owner, . . ."

It is admitted that Campbell lake is non-navigable. Being non-navigable, the respondents, as riparian owners, own the property to the center of the lake. Riparian rights are recognized in law to be valuable property rights. Undoubtedly, in this instance the riparian rights were the principal reason which induced the respondents to purchase this land tract. Since riparian rights are property rights, they cannot be taken by a municipality for public purposes without just compensation to the owner.

"A municipality has a right to take of the waters of a stream for the purpose of supplying its inhabitants with water for domestic and other uses. But, like any other public agency, it cannot do so without condemning and making compensation for the loss of the use of the appropriated waters or the extinguishment of the riparian rights, *in toto* or *pro tanto,* of the affected owners." *Domrese v. Roslyn,* 101 Wash. 372, 172 Pac. 243.

When the city appropriated the water from the lake, it *took* from the respondents the very thing that was necessary and essential to the *use* of their property, and a valuable property right. In other words, the city damaged the respondents' land.

The case of *Martha Lake Water Co. v. Nelson*, 152 Wash. 53, 277 Pac. 382, is directly in point. There a non-riparian land owner was granted a permit by the state supervisor of hydraulics to take a quantity of water from lake Martha. The lower court enjoined the water company from lowering the lake, on the ground that it had failed to acquire the right to do so by eminent domain. Passing on the question, we said:

"In the present case, the lowering of the waters of Martha lake would materially and substantially *damage* the riparian owners. The water's edge would recede, and land which was covered with water at the time of their purchase would become dry land. Under the constitutional provision cited, before their land can be thus *damaged* they are entitled to compensation." (Italics ours.)

See, also, *Madson v. Spokane Valley Land Co.*, 40 Wash. 414, 82 Pac. 718, 6 L. R. A. (N. S.) 257.

▆ We come now to the controlling question in the case. Both in the original and in the amended complaint it was alleged that the city had "commenced two and one-half years prior to the bringing of the action [the action was begun January 22, 1931] to pump waters from said lake Campbell." From this, the appellant argues that the action is barred by the statute of limitations (Rem. Comp. Stat., § 165) which provides that an action must be commenced within two years.

This contention presupposes, however, that the respondents' cause of action is a tort action—one for the recovery of damages for injury to property. It is clear, we think, that the action is not one to recover damages for injury to property, but one to obtain just compensation in payment of private property *taken* for public use. The city did not merely damage the respondents' property, but actually *took* from them the use of their riparian rights. That being so, Rem.

Comp. Stat., § 156, is applicable. Under that section, an action may be brought at any time within ten years to recover real property.

The case of *Aylmore v. Seattle,* 100 Wash. 515, 171 Pac. 659, is controlling on this precise point. We there held that an action could be brought within ten years to recover damages for the wrongful appropriation or taking of private property for public purposes.

"Upon what principle of law, justice or reason can it be said that, because one clothed with the right to condemn private property fails to exercise it and, without complying with the law, goes upon the property of another and carries out its public purposes without hindrance or interference from the owner, it should not thereafter be required to do what it should have done in the first instance—make just compensation to the owner? Why should the property holder, whose acquiescence has redounded to the benefit and convenience of the taker and whose right to compensation is in lieu of his property, have any less period in which to recover the amount due him than he would have had to reclaim his property had he not thus accommodated the corporation? Why should a municipality, which has not exercised a right conferred upon it by the sovereignty in the manner defined by the author of the right, gain an additional advantage over a private owner by virtue of its own unauthorized procedure?

"Moreover, to hold that the action for compensation is barred in two years would be to read an exception in the ten-year statute relative to the recovery of real property. The effect of such a decision would necessarily be to permit a title to real property, for all practical purposes, to be acquired by adverse possession for the period of two years, when, in all other cases, it could only be acquired in ten years. . . . His right of recovery is founded upon, and grows out of, his title to the land, and until such title is lost by adverse possession, he should have the right to maintain an action to recover that which represents the property itself. Any other view is to sacrifice sub-

stance to mere form.'' *Aylmore v. Seattle,* 100 Wash. 515, 171 Pac. 659.

The law tersely stated in Lewis, Eminent Domain (3d ed.), § 966, p. 1713, as follows:

''Where the constitution either expressly, or as interpreted by the courts, requires compensation to be first made for property taken for public use, a law which casts the initiative upon the owner and requires him to prosecute his claim for compensation within a time limited or be barred, is invalid. When under such a constitution property is appropriated to public use without complying therewith, the owner's right to compensation is not barred, except by adverse possession for the prescriptive period.''

▉ Nor was it necessary that the respondent file a claim as a condition precedent to the bringing of the action.

'' . . . the claim was not required to be filed with the city as a prerequisite to the right to sue in the courts thereon, because it did not rest upon tort, nor was it a claim for damage, strictly speaking, growing out of a contract or a breach thereof; but it was a claim for compensation which the city by its act, done in the exercise of its power of eminent domain, impliedly promised to pay.'' *Jacobs v. Seattle,* 100 Wash. 524, 171 Pac. 662.

See, also, *Wong Kee Jun v. Seattle,* 143 Wash. 479, 255 Pac. 645, 52 A. L. R. 625, and *Marshall v. Whatcom County,* 143 Wash. 506, 255 Pac. 654.

We find no merit in appellant's contention that the evidence is insufficient to support the verdict. The appellant in its answer admits that the respondents' property, prior to the time the water was appropriated, was of the value of ten thousand dollars, and in its brief it admits that at the time of the trial the property was worth not to exceed fifteen hundred dollars. The brief says: ''This same witness, *as well as defendants' witness,* testified that the present value of the place is

about $1,500.'' The difference between these two sums is $8,500, or fifteen hundred dollars in excess of the amount of the verdict.

But, irrespective of these specific admissions, the evidence clearly and abundantly supports the verdict.

Appellant next contends that the court erred in giving certain instructions to the jury. We find it unnecessary to analyze and discuss them separately. The instructions as given were comprehensive, and, in our opinion, defined the law applicable to the case with fairness to both parties.

Judgment affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HERMAN, JJ., concur.

