MARGUERITE S. WILLIS & a. v. GEORGE C. WILKINS & a.

*Robert W. Upton* and *John H. Sanders* (*Mr. Upton* orally), for the plaintiffs.

*Frank R. Kenison,* Attorney-General and *Ernest R. D'Amours,* Assistant Attorney-General (*Mr. D'Amours* orally), for the defendants.

MARBLE, J. The rights affected by the regulations in question comprise rights which the plaintiffs are privileged to enjoy primarily as members of the public together with certain incidental rights which they possess as owners of lands bordering Pleasant Pond. *Hoban* v. *Bucklin,* 88 N. H. 73, 87, 88. See also, *Whitcher* v. *State,* 87 N. H. 405, 409. Their lands may be less valuable because of the curtailment of these rights and privileges, yet the resulting loss is not one which entitles them to compensation. *St. Regis &c. Co.* v. *Board,* 92 N. H. 164; *State* v. *Quattropani,* 99 Vt. 360, 363, and cases cited.

The fact that formal notice of the investigation conducted by the State Board of Health was not served upon the plaintiffs as riparian proprietors is unimportant. The statute contains no provision for notice other than a requirement for the posting or publication of the regulations made. P. L., *c.* 141, *s.* 15 (R. L., *c.* 166, *s.* 15). Boards of health act summarily, and it is the prevailing rule that they "need not give notice of hearing to any person before they can exercise their jurisdiction for the public welfare, unless the statute under which they are authorized to act expressly *so* requires." 25 Am. Jur. 315, and cases cited.

Notice was given, however, in the present case both by posting and by publication, and some of the plaintiffs appeared at the hearings and participated therein. While the stenographic reports of the two hearings are fragmentary, there is no deficiency in the official record of the action finally taken. The Board finds as a fact "that there is considerable swimming in the waters of Pleasant Pond and that said waters are in danger of contamination because of swimming and bathing therein; that a continuance of swimming and bathing therein will endanger the public health and that it is necessary for the protection of said water supply against pollution to prohibit swimming and bathing in said pond." On the basis of these facts, the Board adopted various rules and regulations including those to which the plaintiffs object.

The plaintiffs' contention that the Board erred in failing to grant certain requests for findings of fact and rulings of law is without merit. The plaintiffs were not entitled to a hearing as of right, and the Board could, if it saw fit, adopt a summary procedure. Furthermore, in the absence of a transcript of the testimony, no question relating to the sufficiency of the evidence to support the findings or regulations can properly be raised. *Nelson* v. *Morse*, 91 N. H. 177, 178.

The fact that certain members of the Board who participated in the final deliberations did not hear all the testimony introduced at both hearings is immaterial. The Board "had a right to act upon its own inspection and knowledge," it "was not obliged to hear any party," and "could obtain its information from any source and in any way." *People (ex rel. Copcutt)* v. *Board of Health*, 140 N. Y. 1, 10.

In a proceeding for *certiorari* the scope of the inquiry is whether the fact-finding tribunal "has acted illegally in respect to jurisdiction, authority or observance of the law." *Clouthier* v. *Board*, 92 N. H. 199, 203. The plaintiffs, on whom the burden of proof rests (*Barber* v. *School Board*, 82 N. H. 426, 429), have failed, so far as the record is concerned, to show illegality in any of these respects.

But the regulations cannot stand if they are "indisputably unreasonable" (*Carter* v. *Craig*, 77 N. H. 200, 206), for it is not to be presumed that the Board has been invested with "the legislature's power to act arbitrarily" (*St. Regis &c. Co.* v. *Board*, 92 N. H. 164).

The plaintiffs are, for the most part, owners of cottages which they occupy in summer for purposes of recreation. As such owners, they have "rights incidental to the enjoyment of public rights" in

Pleasant Pond "which are more extensive than those of one who is only a member of the public" (*Hoban* v. *Bucklin*, 88 N. H. 73, 87, 88), and although no part of their property is "taken" in the "constitutional sense" of the term by force of the regulations, its "beneficial use" is unquestionably impaired thereby (*State* v. *Morse*, 84 Vt. 387, 393), with a resulting depreciation in value. This fact is, in our opinion, a material circumstance to be considered in determining whether or not the prohibition can be found to be reasonable. But no such determination can be made on the present transfer, since the master in reaching his conclusion has failed to consider all the material evidence bearing on the issue.

The master found that the waters of Pleasant Pond were at times contaminated by the presence of colon bacilli and that these organisms were occasionally present "in lesser quantity" in the Pembroke water system. He further found that there were facts which justified the Board's conclusion "that said pollution would endanger public health," making the adoption of the regulations necessary. But he also found that these regulations were "not the only means which could have been adopted" as "a protection of said supply against pollution."

There was evidence to the effect that the bacteria present in the pond are largely "eliminated by natural self-purification due to the long period of storage which obtains in the pond"; that the lowering of the intake of the water system to the depth of twenty feet "would be an almost perfect safeguard against summer pollution," and that the cost of lowering the intake to that depth would be from $1,600 to $2,500; that chlorination "serves to render the water practically sterile" and that the cost of installing an automatic chlorination plant would be about $2,500, with an annual expense for maintenance and operation amounting to about $200.

In support of their contention that the regulations are arbitrary and unreasonable, the plaintiffs offered to prove that the market value of their properties before the restrictions on the use of the pond were imposed was approximately $70,000, but that, as a result of the action of the Board, the value was reduced from fifty to seventy-five per cent. Subject to the plaintiffs' exception, this evidence was excluded as immaterial.

Such exclusion constitutes reversible error. In passing upon the reasonableness of a statute, "the importance of the public benefit which the legislation seeks to promote is to be balanced against the seriousness of the restriction of private right sought to be imposed."

*Dederick* v. *Smith*, 88 N. H. 63, 68; *Woolf* v. *Fuller*, 87 N. H. 64, 68, 69, and cases cited. The same rule applies to regulations promulgated under legislative authority. *Stone* v. *Cray*, 89 N. H. 483, 485; *Brady* v. *Keene*, 90 N. H. 99, 101.

Since the master declined to receive the proffered evidence and to "balance it on the scales of reasonableness" (*Woolf* v. *Fuller, supra*), his report must be set aside. The order is

*New trial.*

All concurred.

Merrimack,
May 4, 1943. } No. 3362.