[No. 31131. *En Banc.* May 3, 1950.]

*In the Matter of the Petition of* CLINTON WATER DISTRICT *to Appropriate Water from Deer Lake.*[1]

[1]Reported in 218 P. (2d) 309.

*Tyre H. Hollander* (*W. H. Harris*, of counsel), for appellant.

*Morrissey, Eagen & Walsh, Kerr, McCord & Greenleaf,* and *Jones & Bronson,* for respondents.

GRADY, J.—This proceeding was instituted by Clinton water district of Island county to condemn, appropriate, and take from Deer lake 0.155 cubic feet of water per second for domestic uses. The court determined the amount of damages which the riparian land owners would sustain by reason of the appropriation, and the district has appealed. In this opinion, the district will be referred to as the appellant, and the riparian property owners as respondents.

The Clinton water district is approximately one square mile in area and has a population of about three hundred persons. Its water supply is inadequate to meet the needs of those residing within its limits. Deer lake is a natural, nonnavigable body of fresh water, located about one-half mile west of the district. It has an area of about 112 acres and a maximum depth of 50 feet.

The land bordering on the lake has been divided into approximately twenty-six privately owned tracts. Some of them are wholly in their natural and unimproved state. Others have been improved and are being used for residential, agricultural and commercial purposes. The tracts most suitable for country lakeside homes are of sufficient area so that a resident may have a garden and domestic animals and fowls. The owners of three tracts use their properties for commercial purposes, such as renting cabins, camping and picnic facilities, and boats. One property owner operates a twelve-acre tract planted to loganberries. This tract slopes toward the lake and requires intensive fertilization.

The lake affords opportunity for boating, bathing, swimming, and fishing by the residents and the patrons of the commercial places. Access to the lake also permits the use of its water by the livestock and fowls of the property owners. The full use of the land will necessarily result in surface drainage and seepage into the lake other than that which is natural.

The state hydraulic engineer refused to issue a permit to appellant to appropriate water from Deer lake until it had condemned the riparian rights affected by such appropriation. That action was in harmony with *Burrows v. Grays Harbor Boom Co.,* 44 Wash. 630, 87 Pac. 937, and *In re Martha Lake Water Co. No. 1,* 152 Wash. 53, 277 Pac. 382.

The beneficial use of the water of the lake by respondents for consumption and use upon their lands, as defined and limited in *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114, will not be affected by the appropriation of the quantity of water desired by appellant, and it does not appear the court considered such a factor as an element of damage. The court found that there will be no actual physical damage to the riparian lands by the diversion of the water of the lake due to the lowering of the water level, and therefore we do not have for consideration the elements of damage involved in *In re Martha Lake Water Co. No. 1, supra,* or *Litka v. Anacortes,* 167 Wash. 259, 9 P. (2d) 88. The court was of the opinion that riparian rights of respondents would be so

affected by the operation of health laws and regulations in the protection of the water supply sought by appellant that their properties would be depreciated in value, and made awards to them on that basis.

The basic question for our determination is whether the uses of the lake made by respondents in connection with their ownership and occupancy of their riparian lands are such property rights that their loss or limitation constitute a damage for which compensation must be made.

The appellant contends that the use of waters of the lake for swimming, bathing, boating, and fishing are not vested property rights, but are mere incidents of ownership, and if the act having the effect of depriving the riparian owners of such incidental rights is legal, it amounts to nothing more than damage without injury; and even though the state may prevent the use of the lake and its waters in any manner that may cause the water to become contaminated and not suitable for domestic use, such will be the exercise of the police power of the state, for which there can be no recourse by way of damages for depreciation in the market value of the land.

When the respondents or their predecessors in interest acquired their patents, they acquired title to the center of the lake, and riparian rights attached and became appurtenant thereto or incidents of their ownership. They became vested property rights and are included in the protection afforded by Art. I, § 16, of the state constitution, providing that private property shall not be taken or damaged for public or private use without just compensation.

One of such rights is access to the water, which carries with it the rights of boating, bathing, swimming, and fishing. If the land can be used for agricultural purposes, there is incidental thereto the right of drainage into the lake and the right of access by domestic animals and fowls; and if it is capable of use for residential purposes, many rights may be exercised and enjoyed which have always been recognized as riparian rights, reasonable use and due regard for similar rights of others being the standard of conduct.

Neither the courts nor the text writers have attempted to promulgate an all-inclusive definition of riparian rights, but reference to those referred to may be found in *Bowman v. Walthen,* 2 McLean 376, Fed. Cas. No. 1740; *City of New York v. Wilson & Co.,* 278 N. Y. 86, 15 N. E. (2d) 408; *Soo Sand & Gravel Co. v. M. Sullivan Dredging Co.,* 259 Mich. 489, 244 N. W. 138; *Griffith v. Holman,* 23 Wash. 347, 63 Pac. 239, 83 Am. St. 821, 54 L. R. A. 178; *McEvoy v. Taylor,* 56 Wash. 357, 105 Pac. 851, 26 L. R. A. (N.S.) 222; 56 Am. Jur. 808, Waters, §§ 383, 384. Access rights were inferentially recognized in *In re Martha Lake Water Co. No. 1, supra.*

 Rem. Rev. Stat., §§ 2542 and 9474 [P.P.C. §§ 118-169, 423-43], forbid any one to deposit or suffer to be deposited in a lake, the water of which is or may be used for drinking purposes, any matter or thing which can or may pollute the water or do any other act or maintain any condition which might result in such pollution. Regulations of the state board of health forbid fishing, boating, bathing, or wading in a lake from which water is taken for domestic use within a distance of five miles from the intake. Domestic animals may not be permitted to go into such water within that distance from the intake. The board of health is required to enact special rules whenever it becomes desirable because of local conditions to protect a public water supply. Public authorities are required to take all such action as may be necessary to prevent contamination of the water so used.

 If the appellant is permitted to appropriate water from Deer lake for domestic uses, it then becomes the mandatory duty of the board of health to enforce the statutes and the rules and regulations to the end that the domestic water supply will not become contaminated; and if this is done, the property of the respondents will be damaged by depreciation in market values because of curtailment of their riparian rights. It is very clear from the evidence in the record that, if respondents are deprived of the rights of boating, bathing, swimming, and fishing, their property will be less valuable as lakeside homes, or for the commercial uses involving such activities. Enforcement of health

restrictions will impair the value of property for agricultural and other uses. There is testimony in the record to the effect that, if water is diverted from Deer lake by appellant for domestic uses, the land can no longer be used for raising loganberries because of drainage contamination. We therefore reach the conclusion that the appropriation of the water from Deer lake by appellant for domestic uses will result in damage to the property and property rights of respondents for which compensation must be made.

Whenever the rights of riparian proprietors on a stream or lake come into conflict with the rights of those who are entitled to use the waters thereof for domestic purposes, the courts have been confronted with the problem whether the limitations necessary to be put upon riparian uses of the water in order to prevent its contamination are an exercise of the police power of the state to protect public health for which no compensation can be recovered, or whether, if such limitations have the effect of making the riparian lands less valuable for the uses to which they may be adapted, the appropriator of the water must exercise the right of eminent domain and compensate the land owners. There is much conflict of authority on the subject, and a review of the cases would serve no useful purpose. Some of them arose in states in which the common-law doctrine of riparian rights is not recognized; others were governed by the statutory policy of the state, and others arose in states in which the concept of the extent of riparian rights is more restricted, or in which the constitutional provisions relating to acquiring property by eminent domain are not so broad as in this state.

The police power of the state is exercised to promote public welfare by regulating and restricting the use and enjoyment of property by its owners, and in the exercise of the power of eminent domain the public welfare is promoted by taking the property from its owner and either appropriating it to some public use or causing some damage to it for a public benefit. Lewis on Eminent Domain (3d ed.), § 6. These thoughts were expressed in *Conger v.*

*Pierce County,* 116 Wash. 27, 198 Pac. 377, 18 A. L. R. 393, in which we said:

"Eminent domain takes private property for a public use, while the police power regulates its use and enjoyment, or if it takes or damages it, it is not a taking or damaging for the public use, but to conserve the safety, morals, health and general welfare of the public."

This is followed by a quotation from § 6 of Lewis on Eminent Domain. Nichols in his treatise on Eminent Domain (2d ed.), Vol. 1, § 147, states:

"When the public takes the right to divert the water for a public water supply by eminent domain, it is not exercising a public right, but it is taking the property of the riparian owners, and if the effect of the taking is to destroy a riparian owner's right to make a reasonable use of the water as it flows past his land, it is impossible to deny that there is a taking of his property, unless riparian rights, or that particular riparian right, are not property. The introduction of the police power into the argument is nonsense. If a city desired to use a man's house as a hospital, it might not be able to do so if he persisted *vi et armis* in occupying the whole of it as his residence; but it could not lawfully get possession of the property for hospital purposes by passing an ordinance prohibiting the owner from continuing to use it as a residence, and deny him compensation on the ground that the ordinance was merely a police regulation enacted in behalf of the public health. A private watercourse, apart from the public right of navigation, is as much private property as a man's home, even if the ownership is, to a certain extent, joint; and if a city desires to acquire a private watercourse for a reservoir, and to prevent the owners of the property from using it themselves, it should take it by eminent domain and pay for it."

██ The case before us presents a different approach to the subject than we find in any of the cases cited by counsel, or which we have found by independent research. We are of the opinion that the promotion of public welfare in protecting the water supply which appellant seeks to acquire from the state requires the exercise of the power of eminent domain by appellant and not the exercise of its police power by the state; and if appellant desires to change the status of Deer lake into that of a water reservoir for

domestic uses, it is required by the constitution to compensate the riparian owners for the depreciation in the value of their lands and properties by reason of restrictions upon riparian uses. In order to acquire water from Deer lake, it was necessary for appellant to secure from the state a permit to do so. It could not appropriate and take the water from the lake as a matter of right. The state, by virtue of its control over the unappropriated water, may impose conditions upon which it will grant such a permit. It did so by requiring the appellant to institute an eminent domain proceeding to have ascertained any damages respondents might sustain by reason of the appropriation and taking of the water from the lake for domestic uses. It now appears by such act respondents will be limited in the exercise of riparian rights which will depreciate the market values of their property. The direct cause of the damage to the lands is the acquirement of the right to appropriate and take the water for domestic uses.

Appellant did not submit any testimony upon the question of depreciation in market values of the lands of respondents, but elected to stand upon its theory that the taking of the water itself deprived respondents of no property and, as there would be no substantial lowering of the lake level and no physical injury done to the land itself, it must follow that respondents were entitled to no compensation. The court accepted the evidence submitted by respondents and made awards based upon the loss or limitation of riparian rights. It may be, as suggested by appellant, that the total award makes the cost to it prohibitive, but this is the situation in which many condemnors have found themselves and have been unable to achieve their objectives. This is a matter over which the courts have no control and with which they can have no concern.

The judgment is affirmed.

SIMPSON, C. J., BEALS, MALLERY, SCHWELLENBACH, and HAMLEY, JJ., concur.

HILL, J. (dissenting)—It is clear that the depreciation in values testified to by most of the property owners and by

their real-estate expert will be occasioned, not by the taking of the water and the lowering of the lake, but by the possibility, or probability, that boating, bathing, swimming, and fishing will be prohibited or restricted. The trial court found that there would be no physical damage to the lands bordering on the lake by reason of the lowering of the water level, but held that the property owners are entitled to recover compensation for depreciation totaling $145,473 in the market value of their properties.

The water district on this appeal contends that the damages were assessed on a fundamentally wrong basis and that the depreciation in values will result, not from any taking or damaging of riparian property by the water district, but from the possibility of enforcement of restrictive regulations by the state board of health under the police power.

At the outset it should be understood, as pointed out by the majority, that the riparian owners own the bed of the lake, it being nonnavigable. The water in the lake, subject to rights hereinafter discussed, belongs to the state of Washington.

By way of background for any discussion of this case, we should take a quick look at some of the cases passing on the rights of riparian owners on nonnavigable lakes as against nonriparian users lawfully entitled to appropriate surplus waters from such lakes.

The water code of 1917 (Rem. Rev. Stat., § 7351 *et seq.*) declares the public policy of the state to be that, ". . . subject to existing rights all waters within the state belong to the public. . . ." The water code then sets forth in detail the terms and conditions under which water may be appropriated to various uses.

Statutes of this character have been enacted by many of the western states. They, and the decisions under them, have abrogated the common-law rules as to riparian rights because such rules were inappropriate. In arid and semiarid areas, the right of nonriparian landowners to appropriate water represents the difference between aridity and fertility, between prosperous, thriving communities and des-

olation. It is natural that the public policy of the western states having such areas should be to limit the rights of riparian owners to their own necessary uses, and to subordinate other riparian rights to the right of appropriation for beneficial uses. As said in *Gin S. Chow v. Santa Barbara*, 217 Cal. 673, 22 P. (2d) 5, which gives a history of the limitation of riparian rights in many cases:

"There is nothing novel about the limitation of the riparian right to a reasonable, beneficial use of water. Other western states which first adopted the common-law doctrine of riparian rights have effectually changed it to meet modern conditions.

"In the state of Washington the earlier cases were not in harmony, but whatever confusion existed was set at rest in *Brown v. Chase*, 125 Wash. 542 [217 Pac. 23], where the court held, 'that the waters of non-navigable streams in excess of the amount which can be beneficially used, either directly or prospectively, within a reasonable time, are subject to appropriation for use on non-riparian lands'. This rule was reaffirmed in *Proctor v. Sim*, 134 Wash. 606 [236 Pac. 114], *State v. American Fruit Growers*, 135 Wash. 156, [237 Pac. 498], and *Hunter Land Co. v. Laugenour*, 140 Wash. 558 [250 Pac. 41]."

Out of some conflict and confusion in our earlier opinions as to the extent and character of riparian rights on nonnavigable streams and lakes, there came definitive declarations in *Brown v. Chase*, 125 Wash. 542, 217 Pac. 23 (dealing with riparian rights on nonnavigable streams), and *Proctor v. Sim*, 134 Wash. 606, 236 Pac. 114 (dealing with riparian rights on nonnavigable lakes). These opinions were designed to substitute exact and specific declarations for what Judge Holcomb, in *Brown v. Chase, supra*, referred to as the "mere loose and general expressions in some of our opinions." Judge Holcomb—and Judge Bridges, who wrote the opinion in *Proctor v. Sim, supra*—reviewed the public policy of this and other western states as expressed by their legislative bodies and their courts, and laid down rules which were, again quoting Judge Holcomb, "in consonance with the general needs and welfare of the state, especially

in the arid and semi-arid regions, and in harmony with the legislation upon the matter."

In *Proctor v. Sim, supra,* after quoting Rem. Rev. Stat., § 7351, which reads:

"The power of the state to regulate and control the waters within the state shall be exercised as hereinafter in this act provided. Subject to existing rights all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; and, as between appropriations, the first in time shall be the first in right. Nothing contained in this act shall be construed to lessen, enlarge, or modify the existing rights of any riparian owner, or any existing right acquired by appropriation, or otherwise. They shall, however, be subject to condemnation as provided in section 7354 hereof, and the amount and priority thereof may be determined by the procedure set out in sections 7364 and 7377 inclusive hereof";

the court asked:

"What, then, are 'the existing rights' of the appellants as riparian owners which are to be considered as vested rights and may not be interfered with?"

and then answered its own question in these words:

"Our answer is that it is the right to the beneficial use of such portions of the waters of the lake as are either directly or prospectively, within a reasonable time, proper and necessary for the irrigation of their lands and for the usual domestic purposes. In *Brown v. Chase, supra,* we expressly so held with reference to the waters of a non-navigable stream."

The court then held that any surplus water in a non-navigable lake, *i.e.,* any water over and above that needed to meet the vested rights of the riparian owners as above defined, was subject to appropriation for irrigation and domestic use on nonriparian lands.

In *Brown v. Chase, supra,* the court quoted with approval from Professor Pomeroy's work on riparian rights, § 158, as follows:

" 'Only the *excess* of the water remaining unconsumed after *their* needs have been *reasonably* supplied should be

appropriated to the use of distant and non-riparian owners. But in such a case there is no necessity for any resort to the right of eminent domain, to the condemnation of water, nor to the payment of compensation. Communities of owners at a distance from the larger streams should be entitled to reach and appropriate this excess of their waters after the wants of the riparian proprietors are reasonably satisfied, without any condemnation or payment of compensation, since such a use would not substantially affect any rights held by the riparian proprietors on the streams.' "

These two cases, *Brown v. Chase* and *Proctor v. Sim,* seemingly completely disposed of the common-law concept that riparian owners on nonnavigable waters have a right as against nonriparian landowners to have the waters stand or flow in their natural and undiminished state upon or across their lands, or "to have the waters lap their shores as they were by nature wont to do."

This would seem to indicate that riparian owners possess no vested rights of boating, bathing, swimming, and fishing that must be condemned by one lawfully appropriating water for irrigation and domestic uses. Respondents, however, rely upon certain later decisions which have left the state of the law somewhat less than crystal clear.

Chief of these cases is *In re Martha Lake Water Co.,* 152 Wash. 53, 277 Pac. 382. The riparian owners in that case argued that there should be a public policy in the evergreen and copiously watered portions of the state different from that in the arid and semiarid areas, and that thousands of homeowners on the shores of nonnavigable lakes in western Washington ought to have "the right to have the waters lap their shores as they were by nature wont to do." In that case this court distinguished *Brown v. Chase, supra,* and *Proctor v. Sim, supra,* by saying that the question involved in those cases was the ownership of the water; and then proceeded to hold that riparian owners are entitled to be compensated for any damages caused to their properties by the lowering of the water in a nonnavigable lake by a lawful appropriation of water therefrom. The situation was described in these words:

"The water's edge would recede, and land which was covered with water at the time of their purchase would become dry land. Under the constitutional provision cited [Art. I, § 16], before their land can be thus damaged they are entitled to compensation."

Respondents also rely upon *Litka v. Anacortes,* 167 Wash. 259, 9 P. (2d) 88, where the city pumped all of the water out of a lake, leaving it "practically a mud flat." The city apparently relied upon its riparian rights in that case, and, so far as the briefs and opinion indicate, had not taken steps to comply with the provisions of Rem. Rev. Stat., § 7351 *et seq.,* relative to the appropriation of water. The city in that case deprived the riparian owners of water for domestic use and irrigation, not only in violation of the vested rights defined in *Proctor v. Sim, supra,* but in violation of their rights as amplified in the *Martha Lake* case. In the *Litka* case, we held that the *Martha Lake* case was controlling, and, although there is reference to boating and swimming in the opinion, the *Litka* case does not constitute any extension of the rule laid down in the *Martha Lake* case.

Giving *Proctor v. Sim, supra,* and *In re Martha Lake Water Co., supra,* full force and effect, we said, in substance, that, while riparian owners on a nonnavigable lake do not have the right to have the waters thereof "lap their shores as they were by nature wont to do," they are entitled to be compensated for any damage sustained by reason of the failure of the water so to do if the lake is lowered by the appropriation of water therefrom for irrigation and domestic use.

The *Martha Lake* and *Litka* cases are of no assistance to the respondents here, because the trial court in its findings specifically eliminates any actual physical damage to the lands bordering upon the lake by the lowering thereof in consequence of the appropriation of water by the district. It may be, however, that we are confronted with and must answer the question: Do riparian owners on nonnavigable lakes have such rights in the waters of those lakes for boating, bathing, swimming, and fishing that they must be com-

pensated therefor by those lawfully apppropriating water therefrom for domestic and irrigation purposes?

The majority has assumed that the question must be answered, and has forthrightly said yes. That answer may be right, but I am not so persuaded by either the arguments advanced or the authorities cited. Boating, bathing, swimming, and fishing are uses made of the water itself, which belongs to the state, except for the limited beneficial uses thereto set forth in *Proctor v. Sim, supra,* and said to be vested rights of riparian owners.

Since the state owns the water, it might permit the appropriation for irrigation and domestic uses of all water in the lake over and above the limited quantity to which *Proctor v. Sim, supra,* holds that the riparian owners have a vested right for beneficial uses, *i.e.,* such portions of the lake as are either directly or prospectively, within a reasonable time, proper and necessary for the irrigation of their lands and for the usual domestic purposes. It is clear that, under such circumstances, the lawful appropriators would not have to pay for the water taken (*Proctor v. Sim, supra*); and that they would have to pay for the damage, if any, to the land of the riparian owners caused by uncovering it by lowering the water level of the lake (*In re Martha Lake, supra*). But the question now is: Must the lawful appropriators compensate the riparian owners because the water remaining in the lake is insufficient for bathing, boating, swimming, and fishing, although sufficient for the irrigation of their lands and the usual domestic purposes?

While in the present case there is no question but that the quantity of water remaining in the lake, after the appropriation, is ample for boating, bathing, swimming, and fishing, the question in the form just stated forces a consideration of whether or not the right of a riparian owner to use water in excess of his own essential needs, which water belongs to the state, must be condemned by the lawful appropriators before it can be taken by them. However, it is my view that this question may not need to be answered, and I would prefer not to answer it until it has been more exhaustively briefed and argued.

Three situations are presented: (1) If there are such rights (bathing, boating, swimming, and fishing) as against lawful appropriators, and if the water district in this case sought to and did condemn them, the judgment should be affirmed; (2) if there are no such vested rights as against lawful appropriators, the judgment as to damages should be set aside because the damages were based upon the theory that the riparian owners possessed such rights; (3) if there are such rights and the water district did not seek to condemn them, the judgment as to damages should be set aside because the damages can be sustained only on the theory that the district was condemning those rights. Situations (1) and (2) require an answer to the question, whereas, in situation (3), if such rights, if any, were not condemned, no answer is required.

I am in doubt—and the trial court expressed a similar doubt—as to just what was being condemned; but, in reliance upon the repeated statements of counsel for the water district that it was not intended by the condemnation proceeding to take away the rights of the riparian owners to boat, bathe, swim, and fish, I would reserve any decision upon the question stated and propose the following alternative disposition of the case. If the water district would, within thirty days, file in the superior court and in this court a consent that the judgment shall specifically provide that the riparian owners (respondents here) are not thereby divested of the rights, if any, they may have to boat, bathe, swim, and fish in the waters of the lake, the order of this court would then be that the judgment as to damages be set aside, and that the trial court revise the judgment in accordance with the consent referred to, set aside the judgment so far as it relates to the amount of damages, and determine the damages, if any, sustained by the respondents exclusive of any consideration of the loss of the rights to boat, bathe, swim, and fish in the lake. If such a consent was not filed within the designated period, this court would then proceed to a consideration of the question heretofore stated, on the theory that the district

had condemned those rights if they were such vested rights as required condemnation.

I am aware that my proposed disposition of the case would not meet the contention of the respondents that the appropriation of the water by the water district will result in the promulgation and enforcement of regulations by the state board of health prohibiting boating, bathing, swimming, and fishing in the lake, and that, regardless of what the condemnation decree may provide, they will ultimately be prohibited from exercising those rights, and that that fact has a present effect upon their property values.

The answer to that contention is that if in this action the district has not condemned the rights, if any, of boating, bathing, swimming, and fishing, the district cannot interfere with those rights. If some other authority, such as the state acting through its department of health, seeks to restrict or prohibit the exercise of such rights, the riparian owners may assert such rights for what they may be worth; but they are not entitled in this action to recover from the district any damages which they may sustain by the actual or prospective operation of reasonable regulations issued under the police power.

In *Conger v. Pierce County,* 116 Wash. 27, 198 Pac. 377, 18 A. L. R. 393, Judge Bridges, defining police power, said:

"It has been defined as an inherent power in the state which permits it to prevent all things harmful to the comfort, welfare and safety of society. It is based on necessity. It is exercised for the benefit of the public health, peace and welfare. Regulating and restricting the use of private property in the interest of the public is its chief business. It is the basis of the idea that the private individual must suffer without other compensation than the benefit to be received by the general public. It does not authorize the taking or damaging of private property in the sense used in the constitution with reference to taking such property for a public use. Eminent domain takes private property for a public use, while the police power regulates its use and enjoyment, or if it takes or damages it, it is not a taking or damaging for the public use, but to conserve the safety, morals, health and general welfare of the public."

The distinction between a "taking" or "damaging" for public use and the regulation of the use and enjoyment of property rights for the public benefit is well established. The former is within the realm of eminent domain, and the latter is within the sphere of the police power. *Gin S. Chow v. Santa Barbara,* 217 Cal. 673, 22 P. (2d) 5; *California-Oregon Power Co. v. Beaver Portland Cement Co.,* 73 F. (2d) 555. Or, as has been said:

"The effect of the police power is to restrict 'a property right as harmful, while that of eminent domain is to appropriate a property right because it is useful.'" 4 McQuillin, Municipal Corporations (2d ed.) 445, § 1572.

There is sometimes a difficult problem of differentiation, but in this instance the distinction is plain. If the quantity of water here involved was to be appropriated from the lake solely for irrigation purposes, so that there would be no question of future regulation by the state board of health, there would, under the evidence, be little or no depreciation in the value of respondents' property. It is because the water is to be taken for domestic use and because the board of health may and probably will promulgate restrictive regulations that the respondents claim the value of their property is depreciated.

It should be noted that there are limits to the extent to which the beneficial use of property may be interfered with under the police power without compensating the property owners. *Bountiful City v. De Luca,* 77 Utah 107, 292 Pac. 194, 72 A. L. R. 657.

In passing upon the reasonableness of public health regulations, the public benefit sought to be promoted must be balanced against the seriousness of the restriction of the private right sought to be imposed. *Willis v. Wilkins,* 92 N. H. 400, 32 A. (2d) 321. In that case, regulations of the state board of health prohibiting swimming and bathing in "Pleasant Pond" and the maintaining of any fishing houses on the ice thereof were challenged as arbitrary and unreasonable, and it was held reversible error to exclude evidence that the regulations reduced the value of riparian

property from fifty to seventy-five per cent, the court saying that it should have been received so that the master who heard the evidence might "balance it on the scales of reasonableness."

We have before us no regulations of the state board of health, and I do not presume now to pass upon the reasonableness of any regulations that may hereafter issue. I merely point out that the extent to which respondents may be damaged by any prospective operation of the police power cannot be recovered in this action. It follows that, if the district concedes that it did not condemn the rights of the riparian owners to boat, bathe, swim, and fish in the lake, it was error to consider the effect of their being deprived of those rights as an element of damage in the condemnation proceeding.

To summarize: While I have grave doubts as to the majority's determination that the riparian owners ·have vested rights to bathe, boat, swim, and fish in the waters of Deer lake, as against a lawful appropriation of that water for domestic use, I do not believe that the question needs to be determined here, if the water district will disclaim any intention to condemn such vested rights, if any. If such vested rights exist and are not taken by condemnation, the fact that the police power may subsequently prevent their exercise is not an element of damage in the condemnation proceeding.

DONWORTH, J. (dissenting)—While I am in agreement with much that is said in Judge Hill's dissenting opinion, I think that appellant should have stated whether or not it is condemning any rights of respondents to bathe, boat, swim and fish in Deer lake. It was the duty of appellant to specify the precise property rights of respondents which it proposed to acquire in the condemnation proceeding.

This practice has been followed in similar proceedings, as was pointed out in *Seattle v. Faussett,* 123 Wash. 613, 212 Pac. 1085, where we said:

"It has been the common practice, recognized by the courts of this state and sanctioned by this court, to have the special interest or estate sought to be condemned defined

by a statement or stipulation filed by counsel for the petitioner in the eminent domain proceeding. *State ex rel. Kent Lumber Co. v. Superior Court,* 46 Wash. 516, 90 Pac. 663; *Olympia Light & Power Co. v. Harris,* 58 Wash. 410, 108 Pac. 940; *State ex rel. Union Lumber Co. v. Superior Court,* 70 Wash. 540, 127 Pac. 109; *Washington Water Power Co. v. Abacus Ass'n,* 77 Wash. 455, 137 Pac. 1199."

The trial court erroneously ruled that appellant was not under any obligation to define the scope of its intended acquisition of respondents' property rights. Until this is made clear, the court cannot determine the just compensation to which respondents are severally entitled under § 16 of Art. I of the state constitution. I would remand the case for a new trial, to be conducted in accordance with the established practice in such cases.

In the event that, upon a new trial, appellant stipulates that it is not seeking to acquire the rights above enumerated, the decree of appropriation should specifically reserve that question for future determination if, as a direct result of appellant's use of the water, respondents' rights to bathe, boat, swim, or fish in Deer lake should ever actually be impaired or destroyed. If such a contingency arises, the just compensation, if any, for the taking or damaging of those rights can be determined in a future legal action. In my view, it is not necessary nor possible to decide this question on the present record.

With respect to respondents W. E. Braicks and F. W. Wonn, trustees for Pomerelle Company, their right to the natural drainage of their land should be included with, and treated in the same manner as, their right to bathe, boat, swim, and fish in the lake.

ROBINSON, J., concurs with DONWORTH, J.